T.C. Memo. 2006-70

UNITED STATES TAX COURT

MELVIN D. LEE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21038-03.            Filed April 11, 2006.

Melvin D. Lee, pro se.

<u>Michael E. Melone</u> and <u>Catherine G. Chang</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined a deficiency in petitioner's Federal income tax for 1997, an addition to tax, and a penalty, as follows:

| Deficiency | Addition to Tax Under Sec. 6651(a) | Accuracy-Related Penalty Under Sec. 6662(a) |
|---|---|---|
| $67,822 | $16,956 | $13,564 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement or concession of some issues, the two primary issues for decision are (1) whether petitioner has substantiated increased itemized deductions for State and local income taxes, a $25,990 net operating loss (NOL) carryforward from 1996, a $206,881 long-term capital loss carryforward from 1996, $35,289 in suspended passive activity losses in 1992 through 1996 relating to real estate which petitioner sold in 1997, and $40,466 in legal fees relating to an investment in a limited partnership, and (2) whether a nonbusiness loan made by petitioner to a friend became worthless in 1997.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner resided in San Francisco, California.

Petitioner provides consulting services to developers and contractors seeking building permits. Petitioner has invested in various construction projects in the San Francisco Bay area.

Belmont Gardens

In approximately 1994 or 1995, petitioner and Ike Guillory (Guillory), a business associate, formed Belmont Gardens, L.P., as a limited partnership (BG Partnership). The BG Partnership agreement designated Guillory as the general partner and petitioner as the limited partner. Petitioner and Guillory formed the partnership in order to develop a 20-unit senior-living residential complex in Belmont, California (Belmont Gardens). I.P.G. Builders, Inc. (I.P.G. Builders), which Guillory owned, was to serve as the general contractor for construction of Belmont Gardens.

Construction of Belmont Gardens began prior to 1997. At some point during construction, petitioner became dissatisfied with the work performed on Belmont Gardens by I.P.G. Builders. Construction was behind schedule, and the construction quality was substandard. Extensive water damage to many of the units occurred because of leaks in the roof.

Petitioner eventually took legal action against I.P.G. Builders and Guillory to remedy the construction defects and to assume control over construction of Belmont Gardens. On April 25, 1997, petitioner filed a complaint in State court against I.P.G. Builders and Guillory for breach of contract.

Peach Tree Property

Beginning in 1991, petitioner rented out real property he owned in Penryn, California (Peach Tree Property). In 1997 petitioner sold the Peach Tree Property for $235,000.

Dejanu Loan

In mid-1994, petitioner made two loans to a friend of his by the name of Peter Dejanu (Dejanu), which loans totaled $15,000. The loans were to be repaid by Dejanu with interest 30 days from the date each loan was made. Dejanu did not repay the loans. Petitioner attempted to obtain repayment of the loans from Dejanu on approximately a weekly or biweekly basis from the due date in 1994 until some time in 1997.

In 1997, petitioner discovered that Dejanu was essentially insolvent and was seeking funds from other individuals. After discovery of Dejanu's desperate financial situation, and his unsuccessful collection efforts and the length of time his loans to Dejanu had been in default, petitioner concluded that the Dejanu loans were uncollectible, and petitioner ceased collection activities. Petitioner did not recover any principal or interest on the Dejanu loans.

Tax Return and Respondent's Audit

On June 20, 1999, petitioner untimely filed with respondent his 1997 individual Federal income tax return, on which

petitioner claimed various deductions relating to State and local income taxes, an NOL carryover, a long-term capital loss carryover, suspended passive activity losses relating to the Peach Tree Property, legal fees relating to Belmont Gardens, and the worthlessness of the Dejanu loan.

On audit, respondent disallowed the claimed deductions primarily on the grounds of lack of substantiation, as set forth below:

| Nature of Deduction Claimed | Amount Claimed by Petitioner | Amount Allowed by Respondent |
|---|---|---|
| State and local income taxes | $ 17,385 | $3,532 |
| NOL carryforward from 1996 | 25,990 | 0 |
| Long-term capital loss carryforward[1] | 206,881 | 0 |
| Suspended passive activity losses | 35,289 | 0 |
| Legal fees relating to Belmont Gardens | 40,466 | 0 |
| Worthless Dejanu loan[2] | 15,000 | 0 |

[1]From prior years, petitioner claimed a long-term capital loss carryforward into 1997 of $206,881, of which $88,430 was used to offset in full a net long-term capital gain for 1997, $3,000 was claimed as a long-term capital loss for 1997, and the $115,451 balance was reported as a long-term capital loss carryforward to 1998.

[2]On his 1997 individual Federal income tax return, petitioner claimed a business bad debt relating to the Dejanu loan on schedule C, Profit or Loss From Business. Petitioner now concedes that the loan should be treated as a nonbusiness bad debt and reported as a short-term capital loss in 1997, the alleged year of worthlessness.

Respondent disallowed the deduction for the Dejanu loan because respondent determined that the loan became worthless in 1995, not 1997.

Respondent also determined that petitioner was liable under section 6651(a) for an addition to tax for failure to timely file

his 1997 individual Federal income tax return and an accuracy-related penalty under section 6662 on the full amount of the tax deficiency determined by respondent.

OPINION

Taxpayers are expected to keep adequate books and records reflecting their income and expenses. Sec. 6001.

Generally, under section 7491(a), the burden of proof on factual issues relating to a taxpayer's tax liability may shift from the taxpayer to respondent where the taxpayer has credible evidence to substantiate the item in question, has maintained appropriate records relating thereto, and has cooperated with reasonable requests for information relating to the item in question. Sec. 7491(a)(1) and (2); Rule 142(a).

Petitioner has not produced credible evidence to substantiate any of the items at issue, nor has petitioner maintained appropriate records relating to the deductions at issue. Therefore, the burden of proof as to each of the issues in this case remains on petitioner.

State and Local Income Taxes -- $13,853

In general, a taxpayer is allowed an itemized deduction for State and local taxes paid within a year. Sec. 164(a).

Petitioner has not introduced any credible evidence to substantiate that during 1997 he paid the $13,853 in State and

local income taxes.  Petitioner is not entitled to deduct the claimed $13,853 in State and local income taxes in excess of the $3,532 allowed by respondent.

Net Operating Loss Carryforward -- $25,990

Section 172 allows an NOL deduction to a taxpayer equal to the total of the NOL carryforwards and carrybacks to the year. Sec. 172(a).  Absent an election to the contrary, NOLs are to be carried back to the 3 prior years, and then, if not fully absorbed, are to be carried forward to subsequent years up to a maximum of 15 years.  Sec. 172(b)(1)(A), (2), and (3).[1]

Taxpayers bear the burden of establishing both the existence and amount of NOL carrybacks and carryforwards.  Rule 142(a); Keith v. Commissioner, 115 T.C. 605, 621 (2000); Jones v. Commissioner, 25 T.C. 1100, 1104 (1956), revd. and remanded on other grounds 259 F.2d 300 (5th Cir. 1958).

We may consider facts relating to years not in issue that are relevant to the claimed NOLs.  Sec. 6214(b).

The only evidence petitioner has presented with regard to the $25,990 claimed 1996 NOL carryforward is his 1996 individual Federal income tax return.

---

[1]For tax years beginning on or after Aug. 5, 1997, net operating losses are to be carried back 2 years and then carried forward up to a maximum of 20 years.  Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1082(a)(1), 111 Stat. 950.

In this case, petitioner's 1996 tax return is insufficient to substantiate that petitioner incurred an NOL in 1996. Petitioner's tax return only sets forth petitioner's claimed NOL and does not establish petitioner's entitlement thereto. Roberts v. Commissioner, 62 T.C. 834, 837 (1974).

Also, even if petitioner had substantiated that he incurred in 1996 an NOL, petitioner did not file an election to forgo the carryback thereof to prior years. Petitioner was required to carryback any 1996 NOL to 1993, 1994, and 1995 before carrying it forward to 1997. If petitioner had carried back the $25,990 claimed 1996 NOL into 1993, 1994, and 1995, the entire NOL would have been absorbed, and no carryforward into 1997 would be available.

Capital Loss Carryover -- $206,881

Generally, a taxpayer's capital losses and capital gains in a year offset each other, and any excess capital losses, up to $3,000 are allowed as a capital loss deduction in the current year. Any excess may be carried forward to succeeding years. Sec. 1212(b)(1)(A) and (B); sec. 1211(b).

Petitioner did not introduce any evidence to indicate, let alone to substantiate, the year in which the claimed $206,881 capital loss carryover originated, the circumstances which produced the claimed capital loss, or the amount of the capital loss. Petitioner's only effort to substantiate the claimed

capital loss was to introduce Federal income tax returns from prior years on which capital loss carryovers were claimed.

As explained earlier, income tax returns merely reflect taxpayers' claims. They do not establish the facts reflected therein. Without additional evidence of the original claimed capital loss, petitioner's tax returns are insufficient to substantiate his entitlement to the claimed $206,881 capital loss carryover to 1997.

Petitioner argues that respondent's acceptance without adjustment of his prior year income tax returns on which petitioner claimed a carryforward of the capital loss now estops respondent from contesting that the underlying capital loss occurred. We disagree. Respondent is not bound in any given year to allow the same treatment or the same deductions not disallowed in prior years. See Lerch v. Commissioner, 877 F.2d 624, 627 n.6 (7th Cir. 1989); Pekar V. Commissioner, 113 T.C. 158 (1999).

Petitioner's claimed $206,881 capital loss carryforward to 1997 is denied.

## Peach Tree Property Suspended Losses -- $35,289

In general, no deduction is allowed in a year for an individual taxpayer's passive activity losses in excess of passive activity income, but the excess losses may be carried forward to subsequent years to offset subsequent passive activity

income.  Sec. 469(a), (b), (d).  If, however, a taxpayer sells his entire interest in a passive activity, an excess loss relating to the activity for the year the sale occurred (including suspended losses relating to the activity carried forward into the year of the sale) over the total income for the current year from all passive activities is treated as a loss from a nonpassive activity and is not subject to the above limitation of section 469(a).  Sec. 469(g).

Other than the claims made on his 1992 through 1996 Federal income tax returns, petitioner has not offered any evidence to substantiate that he incurred disallowed passive activity losses in 1992 through 1996 in relation to the Peach Tree Property.  As discussed previously, claims made on petitioner's tax returns do not substantiate the items in issue.  Petitioner is not entitled to deduct in 1997 the claimed $35,289 in suspended passive activity losses relating to the Peach Tree Property.

Belmont Gardens Legal Fees -- $40,466

Petitioner has not substantiated that he paid $40,466 in legal fees in relation to the construction of Belmont Gardens. Petitioner introduced into evidence certain checks made to three different law firms; however, these checks totaled only $9,500. At trial, petitioner did not call to testify the attorneys who allegedly represented him in the Belmont Gardens litigation, notwithstanding the Court's suggestion to do so.  See Wichita

Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946),
affd. 162 F.2d 513 (10th Cir. 1947). Petitioner's claimed legal
fees are disallowed.[2]

## Dejanu Loan -- $15,000

A taxpayer is allowed to deduct as a short-term capital loss
nonbusiness debts that become worthless within the year. Sec.
166(d); sec. 1.166-5(a)(2), Income Tax Regs.

Whether a nonbusiness debt is to be treated as worthless in
a particular year is a question of fact to be resolved by an
examination of the circumstances and events. Aston v.
Commissioner, 109 T.C. 400, 415 (1997); Crown v. Commissioner, 77
T.C. 582, 598 (1981). Relevant considerations include the
solvency of the debtor and efforts to collect the debt from the
debtor. Crown v. Commissioner, supra.

On the facts of this case, petitioner has provided
sufficient evidence to establish that the $15,000 Dejanu
nonbusiness loan became worthless in 1997, not in 1995 as

---

[2]We note further that even if petitioner had substantiated
the legal fees in question, respondent contends that any
deductions relating to the legal fees would be limited by the
passive activity loss limitation of sec. 469(a). Petitioner
contends that under State law he became a general partner in
Belmont Gardens L.P. due to his level of activity in the
business, and therefore that sec. 469(a) should not apply to him.
A taxpayer, however, is considered to hold a limited partnership
interest without regard to State law if, in the partnership
agreement, the taxpayer is designated as having a limited
partnership interest. Sec. 1.469-5T(e)(3)(A), Temporary Income
Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).

respondent contends.  Even though the loan first became delinquent in 1994 and even though petitioner in 1995 began to lose hope that it would eventually be repaid, petitioner's continued collection efforts after 1995 and into 1997 indicate that the loan did not become worthless in 1995 or 1996.  The length of time in which the loan was in default, in conjunction with Dejanu's desperate financial condition indicate that this loan became worthless in 1997, not in 1995.

## Accuracy-Related Penalty

Under section 6662, a 20-percent accuracy-related penalty is to be added to that portion of an underpayment of tax attributable to, among other things, a substantial understatement of income tax.[3]  Sec. 6662(a) and (b)(2).

A substantial understatement of income tax is defined as a tax understatement constituting the greater of 10 percent of the tax required to be shown on a Federal income tax return or $5,000. Sec. 6662(d)(1)(A).  An understatement of tax for purposes of determining the accuracy-related penalty may be reduced by that portion of the understatement attributable to

---

[3]Respondent also argues that petitioner is liable for the accuracy-related penalty for negligence or disregard of rules and regulations under sec. 6662(b)(1).  We do not address whether petitioner is liable for the accuracy-related penalty under respondent's alternative theory.

reasonable cause and good faith.  Secs. 6662(d)(2)(B), 6664(c)(1).

Under section 7491(c), respondent has the burden of production with respect to a section 6662 accuracy-related penalty.  Once respondent meets that burden of production, however, the taxpayer continues to have the burden of proof with regard to whether respondent's determination of the penalty is correct.  Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

As a result of our holdings herein, petitioner, on his 1997 individual Federal income tax return, understated his tax by more than $5,000 and also by more than 10 percent of the tax required to be shown.  Respondent has met his burden of production with respect to the accuracy-related penalty.[4]

Petitioner argues that the understatement of tax on his 1997 individual Federal income tax return was due to reasonable cause and was made in good faith because of his reliance on his accountant.  We disagree.

The only alleged erroneous advice petitioner's accountant gave to petitioner related to the carryforward of the claimed 1996 NOL to 1997 instead of a carryback thereof to 1993, 1994, and 1995.  That advice, however, has no bearing on our holding

---

[4]The actual amount to which the sec. 6662 accuracy-related penalty applies is subject to the Rule 155 computation.

because our disallowance of the claimed NOL deduction is due to petitioner's failure to substantiate the NOL, for which petitioner has offered no excuse.

Petitioner is liable for the accuracy-related penalty on the full amount of the understatement of tax on his 1997 individual Federal income tax return as determined herein.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.