T.C. Memo. 2019-163

UNITED STATES TAX COURT

RANDY MCRAE AND SHELBY MCRAE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20552-17.                    Filed December 12, 2019.

Randy McRae and Shelby McRae, pro sese.

<u>Ryan Z. Sarazin</u>, <u>Jeffrey E. Gold</u>, and <u>Bartholomew Cirenza</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  With respect to petitioners' Federal income tax for 2013-2015, the Internal Revenue Service (IRS or respondent) determined deficiencies and accuracy-related penalties as follows:

[*2]

| Year | Deficiency | Penalty |
|------|-----------|---------|
| 2013 | $53,923 | $10,785 |
| 2014 | 19,398 | 3,880 |
| 2015 | 11,223 | 2,245 |

The questions remaining for decision are whether petitioners: (1) executed a binding agreement extending the limitations period for 2013; (2) underreported gross receipts on two Schedules C, Profit or Loss From Business; (3) substantiated itemized deductions for mortgage interest expenses; (4) substantiated Schedule C deductions in excess of the amounts respondent allowed; (5) substantiated deductions for net operating loss (NOL) carryforwards from 2000 or 2001; and (6) are liable for penalties under section 6662(a).[1] After giving effect to concessions by respondent,[2] we resolve these issues in his favor.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) in effect at the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all dollar amounts to the nearest dollar.

[2]Respondent concedes that: (1) the adjustment for gross receipts reported on Mrs. McRae's Schedule C for 2014, as determined in the notice of deficiency, is overstated by $1,060 and (2) petitioners are not required to include in income for 2013 and 2014, as determined in the notice of deficiency, State tax refunds of $1,969 and $205, respectively. We deem petitioners to have conceded, by their failure to adduce any relevant evidence at trial, all adjustments determined in the notice of deficiency that are not discussed in this opinion.

[*3]                    FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. Petitioners resided in Maryland when they filed their petition.

During 2013-2015 each petitioner earned income from employment and from sole proprietorship activity. Mrs. McRae operated Premiere Multimedia, which provided advertising and public relations services (Schedule C1 business). Mr. McRae, who has degrees in law and accountancy, provided services that included general accounting work and tax return preparation (Schedule C2 business).

During the tax years at issue petitioners resided in, and operated their Schedule C businesses from, a house on Wingate Drive in Glen Dale, Maryland (Wingate property). They leased the Wingate property from a landlord who charged them a discounted monthly rent. In consideration of the reduced rental charge, petitioners paid for certain improvements to the Wingate property during their period of occupancy. At no time did they own the Wingate property.

More than a decade before the tax years at issue, Mr. McRae owned residential rental property in the District of Columbia, including an apartment building at 1611 Park Road, N.W. As of 2000 that building had numerous unabated housing

[*4] code violations. The District of Columbia charged Mr. McRae with criminal violations of the housing code.

In October 2000 these criminal charges were resolved through a "disposition agreement" whereby Mr. McRae pledged to divest himself of all D.C. residential rental properties, perform 250 hours of community service, and "donate a total of $175,000" to the tenants association of 1611 Park Road. Mr. McRae agreed to pay this sum in installments, the last of which was due on January 15, 2002. He paid less than $13,000 by the due date. To defray the balance, it appears that another of his properties was sold in May 2002 and that a portion of the proceeds was paid into a court registry to be held for the benefit of the tenants association.

Separately, in October 2014 Mr. McRae made payments of $25,000 each to Kenneth Brewer and the U.S. Department of Housing and Urban Development (HUD). His payments to HUD took the form of a $20,000 cashier's check and a $5,000 personal check with the notation "State of Maryland v. Randy McRae" on the memo line. Mr. McRae testified that these payments were court-ordered restitution arising from his being "accused of having improperly taken some money from Mr. Brewer and from HUD." He testified that he had received funds from Mr. Brewer and HUD in connection with a project to develop low-income housing in Prince George's County, Maryland.

**[\*5]**   It appears that Mr. McRae was adjudged guilty of a crime and sentenced in August 2014 by the Circuit Court for Prince George's County.  See State of Maryland v. McRae, No. CT 10-0637X (Mar. 25, 2015) (order striking "guilty finding and sentence date of August 1, 2014").  At the close of trial we left the record open to enable Mr. McRae to supply documents that would shed light on the nature of the charges filed against him, the crime of which he was convicted, and the sentence originally imposed upon him.

On December 19, 2018, we admitted into evidence documents showing that the attorney in Mr. McRae's criminal case had filed a motion to reconsider sentencing, requesting that Mr. McRae be discharged "without judgment of conviction."[3] On March 25, 2015, the sentencing court granted that motion, striking the "guilty finding and sentence" originally imposed, sentencing Mr. McRae "to probation before judgment," and placing him on unsupervised probation for one year.  Ibid. As a condition of probation, Mr. McRae was ordered to pay $25,000 of restitution to each of HUD and Mr. Brewer, amounts that he appears to have paid five months previously, in October 2014.

---

[3]See Md. Code Ann., Crim. Proc. sec. 6-220(g)(3) (West 2015) ("Discharge * * * under this section shall be without judgment of conviction and is not a conviction for the purpose of any disqualification or disability imposed by law because of conviction of a crime.").

**[\*6]**  Finding these documents illegible in part, we offered petitioners another opportunity to submit legible documents and any other information that would explain the background of the criminal case and the reasons why restitution was ordered.  Petitioners submitted no additional clarifying documents.

For the tax years at issue petitioners jointly filed timely Forms 1040, U.S. Individual Income Tax Return, using commercial tax preparation software to pre-pare the returns.  For 2013 and 2014 they claimed among their itemized deduc-tions mortgage interest expenses of $31,800 and $16,800, respectively.  On Line 21, Other income, they reported for 2013, 2014, and 2015 NOL carryforward deductions of $79,160, $18,940, and $60,000, respectively.  The Schedule C1 for Mrs. McRae's sole proprietorship reported for 2013, 2014, and 2015 gross receipts of $8,695, $6,120, and $7,756, respectively.  The Schedule C2 for Mr. McRae's sole proprietorship reported gross receipts and expenses as follows:

|  | 2013 | 2014 | 2015 |
|---|---|---|---|
| Gross receipts | $12,550 | $7,500 | $16,720 |
| Total expenses | 36,447 | 64,642 | 10,033 |
| Net profit (Loss) | (23,897) | (57,142) | 6,687 |

The IRS selected petitioners' 2013-2015 returns for examination, which was conducted by Revenue Agent (RA) Boyd.  Concluding that petitioners had not maintained adequate records for their Schedule C activities, RA Boyd secured

**[\*7]** bank records of their known accounts and performed a bank deposits analysis. She concluded that the gross receipts of Mr. McRae's Schedule C2 business for 2013 and 2014 were understated by $26,205 and $5,950, respectively, and that the gross receipts of Mrs. McRae's Schedule C1 business for 2014 were understated by $6,110. RA Boyd provided to petitioners during the examination the bank deposit worksheets she had prepared to support these adjustments.

RA Boyd proposed to disallow, for lack of substantiation, the deductions for utilities expenses claimed on Mrs. McRae's Schedules C1 and many of the deductions claimed on Mr. McRae's Schedules C2. She likewise proposed to disallow, for lack of substantiation, the itemized deductions petitioners had claimed for mortgage interest expenses and all of their NOL deductions. On December 23, 2016, RA Boyd sent petitioners a letter noting that the period of limitations for 2013 would soon expire and asking that they execute Form 872, Consent to Extend the Time to Assess Tax, if they wished to continue discussions.

When petitioners did not immediately respond to this letter, the case was forwarded as an "unagreed case" to the IRS Technical Services division, where it was assigned to Julia Beckett, a reviewer, to confirm that petitioners understood their IRS appeal rights. She telephoned Mr. McRae, who disputed the proposed denial of the NOL deductions and stated that he had additional evidence he wished

**[*8]** the IRS to consider.  Ms. Beckett informed him that the examiner could consider additional evidence only if he and his wife agreed to extend the period of limitations for 2013.  Shortly thereafter petitioners submitted a fully executed Form 872 that extended by one year, to April 15, 2018, the assessment period for 2013.  An IRS official countersigned the Form 872 on February 22, 2017.

Petitioners appear to have submitted additional information, but it did not change any minds.  On April 21, 2017, RA Boyd finalized and submitted to her immediate supervisor a Civil Penalty Approval Form, recommending the assertion of accuracy-related penalties against petitioners for 2013-2015.  Her supervisor signed that form on April 26, 2017.  On June 30, 2017, Ms. Beckett prepared Form 4549-A, Income Tax Examination Changes, and enclosed that report with a notice of deficiency issued to petitioners on July 5, 2017.  On September 29, 2017, they timely petitioned for redetermination.

OPINION

A.    <u>Limitations Period for 2013</u>

Petitioners contend that the limitations period for 2013 expired before the IRS mailed the notice of deficiency.  The Commissioner generally must issue a notice of deficiency within three years after the return was filed or (if the return was filed early) within three years of the last day prescribed for its filing.  <u>See</u>

**[\*9]** secs. 6501(a) and (b)(1), 6213(a); <u>Woods v. Commissioner</u>, 92 T.C. 776, 779-780 (1989). But the limitations period can be extended if "the Secretary and the taxpayer have consented in writing" to such extension, provided that their agreement is executed before expiration of the otherwise-applicable limitations period. Sec. 6501(c)(4)(A).

Petitioners signed a Form 872 consenting to extension of the 2013 assessment period to April 15, 2018. That consent became effective on February 22, 2017, when the Form 872 was signed by the Commissioner's delegate. As required by section 6501(c)(4), the Form 872 agreement was fully executed before April 15, 2017, when the limitations period for 2013 would otherwise have expired. The notice of deficiency was issued on July 5, 2017, nine months before the end of the extended limitations period. The notice was therefore timely.

When the Commissioner produces a properly executed Form 872, the taxpayer bears the burden of proving the agreement invalid. <u>Kronish v. Commissioner</u>, 90 T.C. 684, 692-693 (1988); <u>Duncan v. Commissioner</u>, T.C. Memo. 2018-190, at \*10. Petitioners first contend that the Form 872 is invalid on its face because they filed their 2013 return on February 14, 2014, more than three years before the IRS countersigned the Form 872. But section 6501(b)(1) provides that, for purposes of section 6501, a return "filed before the last day prescribed * * * for the

**[\*10]** filing thereof, shall be considered as filed on such last day." Petitioners' 2013 return is thus considered to have been filed on April 15, 2014. The Form 872 was fully executed on February 22, 2017, within three years of that date, and it was thus executed in timely fashion.

Petitioners next contend that respondent should be estopped from relying on the Form 872. Mr. McRae asserts that Ms. Beckett told him, before petitioners signed that form, that petitioners would have only a "small liability" for 2013, as opposed to the $53,923 deficiency that the IRS determined. But for this supposed misrepresentation, petitioners assert that they would not have agreed to extend the limitations period. At trial we heard testimony from Mr. McRae and Ms. Beckett on this point.

"Although the doctrines of estoppel and quasi-estoppel are applicable against the Commissioner, it is well established that these doctrines should be applied against him with utmost caution and restraint." Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977). A taxpayer claiming the benefits of estoppel must establish (among other things) that: (1) there was a false representation or wrongful misleading silence by an IRS representative, (2) the taxpayer was ignorant of the true facts, and (3) the taxpayer was adversely affected by the conduct complained of. Id. at 617-618; Costello v. Commissioner, T.C. Memo. 2016-184,

**[\*11]** 112 T.C.M. (CCH) 396, 399; see <u>Wilkins v. Commissioner</u>, 120 T.C. 109, 112 (2003).

Petitioners have failed to establish any of these elements. Having heard the participants' testimony, we do not believe that Ms. Beckett made any misrepresentation to Mr. McRae. In any event, Mr. McRae was not ignorant of the facts. He knew that the IRS was proposing to disallow (among other deductions) an NOL deduction of $79,160 for 2013; that disallowance would not have produced a "small liability" for 2013. And petitioners were not adversely affected by signing the Form 872. Had they not done so, the IRS would have issued them immediately a notice of deficiency determining the same adjustments that it ultimately determined. We find that petitioners have fallen woefully short of establishing estoppel against the Commissioner.

B.     <u>Unreported Gross Receipts</u>

The Commissioner's determinations in a notice of deficiency are generally presumed correct. Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). This Court has recognized a limited exception to the presumption of correctness in unreported income cases, requiring the Commissioner to establish a "minimal evidentiary foundation supporting his determination of unreported income." <u>Fankhanel v. Commissioner</u>, T.C. Memo. 1998-403, 76 T.C.M. (CCH) 809, 813, <u>aff'd</u>

[*12] <u>without published opinion</u>, 205 F.3d 1333 (4th Cir. 2000).  Once the Commissioner has laid this foundation, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous.  <u>Helvering v. Taylor</u>, 293 U.S. 507, 515 (1935); <u>Tokarski v. Commissioner</u>, 87 T.C. 74 (1986).[4]

If a taxpayer fails to maintain adequate records, the IRS may reconstruct his income using any method that "clearly reflect[s] income."  Sec. 446(b); <u>see</u> <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 687 (1989).  "The use of the bank deposit method for computing unreported income has long been sanctioned by the courts." <u>Clayton v. Commissioner</u>, 102 T.C. 632, 645 (1994); <u>see</u> <u>Mills v. Commissioner</u>, 399 F.2d 744, 749 (4th Cir. 1968), <u>aff'g</u> T.C. Memo. 1967-67; <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651, 656 (1975), <u>aff'd</u>, 566 F.2d 2 (6th Cir. 1977).  A bank deposit is "prima facie evidence of income."  <u>Mills</u>, 399 F.2d at 749; <u>Tokarski</u>, 87 T.C. at 77.  Through his bank deposits analysis respondent has clearly connected petitioners to income-producing activity.

---

[4]Absent stipulation to the contrary, appeal of the instant case would lie to the U.S. Court of Appeals for the Fourth Circuit.  <u>See</u> sec. 7482(b)(2).  That court does not appear to have decided explicitly the scope of the exception discussed in the text.  <u>See</u> <u>Dunne v. Commissioner</u>, T.C. Memo. 2008-63, 95 T.C.M. (CCH) 1236, 1246 n.5 (discussing <u>Cebollero v. Commissioner</u>, 967 F.2d 986, 990 (4th Cir. 1992), <u>aff'g</u> T.C. Memo. 1990-618).  We apply the formulation that has been approved by this Court and by most Courts of Appeals.  <u>See</u> <u>id.</u> at 1246.

**[*13]** Petitioners first contend that RA Boyd was not justified in employing the bank deposits method, asserting that they had delivered to her "sufficient competent evidentiary matter to * * * attest to their records." We find no factual support for this assertion. Petitioners maintained no distinct records of their Schedule C businesses; their only "records" consisted of a few receipts and the same bank statements that RA Boyd used to perform her bank deposits analysis. She did not err in using a bank deposits analysis to reconstruct their income. See sec. 446(b); Petzoldt, 92 T.C. at 693; sec. 1.446-1(b)(1), Income Tax Regs.

RA Boyd testified credibly concerning her application of the bank deposits method, producing spreadsheets documenting her analysis along with copies of petitioners' bank statements and deposit slips. These spreadsheets show that she excluded items she identified as nontaxable, including credit adjustments, bank errors, and interaccount transfers. Petitioners bore the burden of showing that her analysis was inaccurate, e.g., by identifying additional nontaxable items that she failed to exclude. See Clayton, 102 T.C. at 645; DiLeo v. Commissioner, 96 T.C. 858, 872 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Chico v. Commissioner, T.C. Memo. 2019-123, at *19.

[*14] With one exception,[5] petitioners have failed to carry their burden. Mr. McRae speculated that some deposits into his account might have been nontaxable receipts from clients (such as security deposits), but he supplied no documentation of any kind to support that claim. Petitioners had ample time to secure evidence on this point, having been supplied copies of RA Boyd's bank deposit worksheets during the IRS examination. Concluding that petitioners have failed to show any error in the bank deposits analysis apart from the error respondent conceded, we sustain the determination of unreported Schedule C1 and C2 gross receipts in the aggregate amounts of $26,205 for 2013 and $11,000 ($5,950 + $5,050) for 2014.

C.    Unsubstantiated Deductions

Deductions are a matter of legislative grace, and taxpayers generally bear the burden of proving their entitlement to all deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); see Rule 142(a). Taxpayers also bear the burden of substantiating the amounts of their deductions by keeping and producing records sufficient to enable the IRS to determine the correct tax liability. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

---

[5]Respondent concedes that one deposit, in the amount of $1,060, should have been excluded from Schedule C1 gross receipts for 2014. See supra note 2.

**[\*15]** Certain expenses, including expenses for travel and "listed property," are subject to relatively strict substantiation rules. See secs. 274(d), 280F(d)(4) (defining "listed property" to include passenger automobiles). No deduction is allowed for expenditures subject to these rules unless a taxpayer substantiates, by adequate records or by sufficient evidence corroborating his own statements, the amount, time and place, and business purpose for each expenditure. See sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

1. Itemized Deductions

Petitioners claimed deductions of $31,800 and $16,800 for mortgage interest expense in 2013 and 2014, respectively. The IRS properly disallowed these deductions. Petitioners did not own the Wingate property, they were liable on no mortgage loan, and they substantiated no payment of interest. Their evidence on this point consisted of their lease, receipts for improvements to the Wingate property (made in exchange for reduced rent), and bills for utilities and insurance. Petitioners apparently had an option to acquire the Wingate property, but they never exercised that option. They cannot deduct rent, substitutes for rent, or personal living expenses as "mortgage interest." See sec. 163; Puentes v. Commissioner T.C. Memo. 2013-277, 106 T.C.M. (CCH) 646, 647 ("We have disallowed the deduction for mortgage interest where the taxpayer does not establish legal or

[*16] equitable ownership of mortgaged property."); sec. 1.163-1, Income Tax Regs.

2.    Schedule C Deductions

Section 162(a) allows the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a common or frequent transaction in the type of business involved. See Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful to the operation of the taxpayer's business. See Commissioner v. Tellier, 383 U.S. 687, 689 (1966).

a.    Utilities Expenses

For 2013-2015 petitioners claimed Schedule C1 deductions of $1,420, $1,300, and $1,440, respectively, for utilities expenses. To substantiate these deductions petitioners submitted invoices for utility service to the Wingate property, apparently on the theory that Mrs. McRae maintained a "home office" there. But petitioners reported no "home office" deductions on their 2013-2015 tax returns, and Mrs. McRae did not testify at trial. Petitioners submitted no evidence to establish that any part of their home was "exclusively used on a regular basis" for the conduct of Mrs. McRae's Schedule C1 business or Mr. McRae's Schedule C2

[*17] business.  See sec. 280A(c)(1).  We accordingly sustain respondent's disallowance of the deductions for utilities expenses.

###### b. Car and Truck Expenses

For 2014 petitioners claimed a Schedule C2 deduction of $12,480 for car and truck expenses.  To substantiate this deduction petitioners submitted no logs establishing Mr. McRae's business use of any vehicle, but only two invoices for car repairs.  Having failed to establish the extent (if any) to which any of their vehicles was used for business purposes, petitioners have not satisfied the strict substantiation requirements of section 274(d).  See Robinson v. Commissioner, T.C. Memo. 2011-99, 101 T.C.M. (CCH) 1473, 1481-1482 (upholding disallowance of deductions for vehicle and travel expenses where taxpayers supplied no evidence of business purpose), aff'd, 487 F. App'x 751 (3d Cir. 2012); see also Renner v. Commissioner, T.C. Memo. 2015-102, 109 T.C.M. (CCH) 1526, 1529. We thus sustain respondent's disallowance of the deduction for car and truck expenses.

###### c. Travel Expenses

For 2013-2015 petitioners claimed Schedule C2 deductions of $3,550, $2,850, and $4,377, respectively, for travel expenses.  To substantiate these deductions petitioners submitted receipts for a few car rentals and hotel stays.  At trial

**[*18]** Mr. McRae could not identify the reason for this travel, much less substantiate its business purpose.  See sec. 1.162-2(b)(1), Income Tax Regs.  Petitioners have not satisfied the strict substantiation requirements of section 274(d) for travel expenses.  See Berkley Mach. Works & Foundry Co. v. Commissioner, 623 F.2d 898, 907 (4th Cir. 1980) (finding evidence concerning general nature of business travel insufficient to demonstrate a business purpose for each trip), rev'g T.C. Memo. 1977-177; Robinson, 101 T.C.M. (CCH) at 1482.  We accordingly sustain respondent's disallowance of these deductions.

d.    Professional Services Expense

For 2013-2015 petitioners claimed Schedule C2 deductions of $5,200, $4,390, and $310, respectively, for legal and professional services.  Petitioners presented no documentary evidence to substantiate these deductions, and Mr. McRae offered no credible testimony concerning these items at trial.  We accordingly sustain respondent's disallowance of these deductions.[6]

---

[6]Petitioners ask that we estimate their business expenses and allow deductions accordingly.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  We decline to do so.  We are not authorized to estimate expenses subject to the strict substantiation requirements of section 274(d).  See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).  And in the absence of any proof, we have no reasonable basis to estimate their other claimed expenses.  See Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

**[*19]**      e.      <u>Other Expenses</u>

For 2013 and 2014 petitioners claimed Schedule C2 deductions for "other expenses" in the amounts of $3,550 and $50,000, respectively. They offered no substantiation for the 2013 deduction. For the 2014 deduction they offered evidence that Mr. McRae had paid $25,000 to each of HUD and Kenneth Brewer in October 2014 as "restitution." Although petitioners have substantiated payments totaling $50,000, they have not carried their burden of proving their entitlement to a deduction under section 162(a) for these payments.

Mr. McRae was ordered to pay restitution by a Maryland State court after it found him guilty of a crime. Petitioners face two threshold obstacles in seeking to deduct these payments as "ordinary and necessary expenses" under section 162(a). First, petitioners failed to supply any documents or other evidence that would shed light on the nature of the charges filed against Mr. McRae, the crime of which he was convicted, or the sentence originally imposed upon him. If he was charged with embezzlement (for example), there is no evidence that petitioners included the embezzled funds in income for any prior year, a fact that could affect their ability to claim deductions for making restitution to the victims. See <u>Stephens v. Commissioner</u>, 905 F.2d 667, 668 (2d Cir. 1990) (allowing loss deduction under section 165 for restitution payment where the taxpayer in a prior year "was taxed

[*20] upon his receipt of the * * * [embezzled funds]"), rev'g and remanding 93 T.C. 108 (1989); cf. Smiling v. Commissioner, T.C. Memo. 2017-196, 114 T.C.M. (CCH) 403, 406 (disallowing business-expense deduction for payment allegedly made to protect attorney's professional reputation, where payment constituted the return of client funds not previously included in the attorney's income).

Second, section 162(f), as in effect for the tax years at issue,[7] provided that "[n]o deduction shall be allowed * * * for any fine or similar penalty paid to a government for the violation of any law."  The term "government" was defined to include "a State" or any "political subdivision" thereof.  Sec. 1.162-21(a)(1), (3), Income Tax Regs.  The term "fine or similar penalty" was defined to include an amount "[p]aid pursuant to conviction or plea of guilty or nolo contendere for a crime (felony or misdemeanor) in a criminal proceeding."  Id. para. (b)(1)(i).  We have held that court-ordered restitution paid to a third party may be deemed "paid to a government," sec. 162(f), if paid "in satisfaction of * * * [the defendant's] criminal liability to the State," Waldman v. Commissioner, 88 T.C. 1384, 1389 (1987), aff'd, 850 F.2d 611 (9th Cir. 1988); cf. Cavaretta v. Commissioner, T.C.

---

[7]Section 162(f) was amended by the Tax Cuts and Jobs Act of 2017 (TCJA), Pub. L. No. 115-97, sec. 13306(a), 131 Stat. at 2126.  That amendment was effective for amounts paid after the TCJA's date of enactment (unless paid pursuant to a binding agreement executed previously).  See TCJA sec. 13306(a)(2), 131 Stat. at 2127.

**[\*21]** Memo. 2010-4, 99 T.C.M. (CCH) 1028, 1031 (holding restitution payment deductible under section 162(a) when restitution was not explicitly ordered by sentencing court, and its primary purpose was compensatory rather than punitive).

We find it unnecessary to address these threshold issues here. Regardless of whether section 162(f) would bar the claimed deduction and whether petitioners previously included in income the funds of which they made restitution, they have failed to establish that the restitution payments of $50,000 were ordinary and necessary expenses of Mr. McRae's Schedule C2 business.

Mr. McRae's Schedule C2 business involved general accounting work and tax return preparation. He supplied no testimony or documentary evidence to establish any link between these activities and his restitution payments. He testified that he was "accused of having improperly taken some money from Mr. Brewer and from HUD" in connection with a project to develop low-income housing in Prince George's County. For all that appears, this project involved an investment activity on Mr. McRae's part, not an activity having any relationship to his Schedule C2 business. See Wang v. Commissioner, T.C. Memo. 1998-389, 76 T.C.M. (CCH) 753, 757 (holding that a banker's insider trading was not directly or proximately related to his banking business but was sporadic activity arising from

**[*22]** "a limited opportunistic transactional relationship"), aff'd, 35 F. App'x 643 (9th Cir. 2002).

Petitioners submitted no evidence to show that Mr. McRae's payment of restitution to HUD and Mr. Brewer was necessary to preserve the client base of his Schedule C2 business or otherwise to benefit that business. For all that appears, Mr. McRae paid the restitution, as the court ordered him to do, for purely personal reasons, viz., to satisfy the conditions of his probation and thus avoid jail time. Compare Boyko v. Commissioner, T.C. Memo. 1998-67, 75 T.C.M. (CCH) 1830, 1835 (finding payment not deductible as an ordinary and necessary expense of taxpayer's law practice where he "presented no evidence that his business reputation as an attorney would have been adversely affected" by nonpayment), with Gould v. Commissioner, 64 T.C. 132, 135 (1975) (allowing business expense deduction where "[t]he evidence [wa]s clear that * * * [the taxpayer's] motive was to preserve his employment"), and Marks v. Commissioner, 27 T.C. 464, 467 (1956) (same, where evidence showed that taxpayer made payment to protect his "business rather than his personal reputation"). Petitioners submitted no evidence on this point, and they have therefore failed to carry their burden of proving that the

**[*23]** restitution payments were "ordinary and necessary" business expenses deductible under section 162(a).[8]

### 3. NOLs

For the tax years at issue section 172(a) allowed a deduction equal to the sum of the taxpayer's NOL carryovers and NOL carrybacks to the taxable year.[9] An unused NOL was (and is) generally required to "be carried to the earliest of the taxable years to which * * * such loss may be carried." Sec. 172(b)(2). The period to which NOLs could be carried generally extended 2 years back and up to 20 years forward. Sec. 172(b)(1)(A). A taxpayer could elect to relinquish the carryback period, but only if he made such an election by the due date for filing a return for the year in which the NOL arose. Sec. 172(b)(3).

Taxpayers bear the burden of establishing the existence and amount of NOL carrybacks and carryforwards, which requires that they submit evidence regarding prior tax years. See sec. 6214(b); Rule 142(a); Keith v. Commissioner, 115 T.C.

---

[8]Petitioners do not contend that the restitution payments were deductible under section 165(c)(2) as "losses incurred in any transaction entered into for profit, though not connected with a trade or business." Cf. Stephens v. Commissioner, 905 F.2d 667 (2d Cir. 1990) (discussing circumstances in which restitution payments may be deductible under section 165(c)(2)), rev'g and remanding 93 T.C. 108 (1989)).

[9]The TCJA made amendments to section 172 that have no application here. See TJCA sec. 13302(a), (b), (e), 131 Stat. at 2121-2123.

[*24] 605, 621 (2000). Tax returns for prior years may be necessary to establish an NOL carryforward, see sec. 172(b)(2) and (3), but the returns themselves cannot substantiate, without other evidence, the losses reported on those returns, Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979) ("The fact that a return is signed under penalty of perjury is not sufficient to substantiate deductions claimed on it."); Roberts v. Commissioner, 62 T.C. 834, 837 (1974) (same); Lee v. Commissioner, T.C. Memo. 2006-70, 91 T.C.M. (CCH) 999, 1001 (holding that a prior year return was insufficient to establish that an NOL was incurred in that year).

Petitioners claimed NOL carryforward deductions of $79,160, $18,940, and $60,000 for 2013, 2014, and 2015, respectively. The regulations require that any taxpayer claiming an NOL deduction for any year "shall file with his return for such year a concise statement setting forth the amount of the * * * [NOL] deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the * * * [NOL] deduction." Sec. 1.172-1(c), Income Tax Regs. Petitioners attached no such statement to their 2013, 2014, or 2015 tax return.

Petitioners contend that their NOL carryforwards stem from a section 165 loss they supposedly incurred in 2000 or 2001, when Mr. McRae allegedly paid

**[*25]** $175,000 to the 1611 Park Road tenants association in connection with the "disposition agreement" that resolved criminal housing code charges against him. We will assume arguendo that Mr. McRae paid this sum and that the payment gave rise to a loss deduction in 2000 and/or 2001 under section 165(c)(1) or (2). Petitioners have nevertheless failed to establish their entitlement to NOL carryforward deductions.

Petitioners produced no tax returns for any year before 2013 and no evidence regarding their tax treatment of this item in any prior year. They have thus failed to establish: (1) the year or years in which the original loss(es) actually occurred; (2) the amount of petitioners' NOL for that year or years; (3) whether petitioners made a timely election to relinquish the carryback period for the NOL(s); (4) if not, whether any portion of the NOL(s) was carried back to prior years; or (5) whether any portion of the NOL(s) was carried forward to (and thus used up in) the 10 years between 2002 and 2013. See Power v. Commissioner, T.C. Memo. 2016-157, 112 T.C.M. (CCH) 241, 245 (holding that taxpayer failed to "prove that the purported NOLs were not completely absorbed before the taxable years in issue"); Jasperson v. Commissioner, T.C. Memo. 2015-186, 110 T.C.M. (CCH) 304, 305 (holding that taxpayer failed to establish that "he made elections

**[*26]** * * * to waive the carryback requirement"), aff'd, 658 F. App'x 962 (11th Cir. 2016).

The NOL carryforward deductions that petitioners claimed for 2013-2015 totaled $158,100, an amount equal to 90% of the $175,000 loss they supposedly incurred in 2000 or 2001. It would be very surprising if they had used only $17,000 of that loss, via carryback or carryforward, during 1998-2012. Petitioners appear to believe that the IRS should have looked into this question for them, computing their available NOL carryforward deduction by accessing their prior tax returns. But the burden of claiming and substantiating NOLs rests with the taxpayer. See Keith, 115 T.C. at 621. In any event, the burden of substantiating NOLs cannot be satisfied by viewing tax returns alone. See Wilkinson, 71 T.C. at 639; Lee, 91 T.C.M. (CCH) at 1001.[10]

D.     Accuracy-Related Penalties

Section 7491(c) provides that "the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for

_____

[10]In their post-trial brief petitioners do not dispute that they supplied no evidence that would enable the Court to determine the existence or amount of any NOL carryforward to 2013, 2014, or 2015. They assert that they "repeatedly informed [r]espondent that the NOL being utilized occurred in year 2000/2001," and that it is their "belief and recollection" that "there was an election filed to carryforward the apartment losses." These assertions do not substitute for evidence.

[*27] any penalty * * * ."  Among respondent's burdens is to show compliance with section 6751(b)(1).  It provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination."

RA Boyd recommended the assertion of accuracy-related penalties under section 6662(a) and (b)(2).  That recommendation was approved in writing by her immediate supervisor on April 26, 2017, as evidenced by a Civil Penalty Approval Form included in the record.  Supervisory approval of the penalties was thus secured before IRS officers completed the Form 4549-A (on June 30, 2017) and issued the notice of deficiency (on July 5, 2017).

We find that respondent has met his burden of production with respect to penalty approval.  Petitioners do not challenge the timeliness of that approval and have submitted into the record no evidence suggesting that the approval was untimely.  We thus conclude that respondent has satisfied the requirements of section 6751(b)(1).

The Code imposes a 20% penalty upon the portion of any underpayment attributable to any "substantial understatement of income tax," i.e., an understatement that exceeds the greater of $5,000 or 10% of the tax required to be shown on

[*28] the return. Sec. 6662(a), (b)(2), (d)(1)(A). Petitioners reported tax liabilities of $17,111, $1,013, and $2,730 on their returns for 2013, 2014, and 2015, respectively. The notice of deficiency determined tax liabilities of $71,034, $20,411, and $13,953, respectively. Although respondent's concessions will reduce those liabilities slightly, it is obvious that petitioners' understatement of income tax for each year will be "substantial." See sec. 6662(d)(1).

The section 6662 penalty does not apply to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to * * * [it]." Sec. 6664(c)(1). The decision whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances." Ibid.

We find that petitioners have not established reasonable cause or good faith. Mr. McRae, a certified public accountant, performed professional services that included tax return preparation. He presumably had sufficient knowledge and experience to understand his tax obligations. Yet petitioners failed to maintain proper records of their Schedule C businesses, offered no credible explanation for

**[\*29]** failing to report substantial amounts of income, and had virtually no substantiation for their deductions. Petitioners prepared their returns using commercial software and do not allege any reliance on professional advice. See Langley v. Commissioner, T.C. Memo. 2013-22, 105 T.C.M. 1148, 1150 ("Tax preparation software * * * is only as good as the information the taxpayer puts into it."). Finding that petitioners have not established reasonable cause, we hold that they are liable for accuracy-related penalties.

To implement the foregoing,

Decision will be entered under

Rule 155.